IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AMTRAK TRAIN DERAILMENT IN PHILADELPHIA, PENNSYLVANIA, ON MAY 12, 2015 | : | MDL NO. 2654 15-md-2654 |
| This document relates to: Civil Action No. 2:15-cv-04354-LDD | : | |

MEMORANDUM

Before this Court is plaintiffs Mark and Nicola Tulks' motion for preliminary settlement class certification pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). For the reasons discussed below, this motion is DENIED.

I. Factual Background

On May 12, 2015, at approximately 9:21 P.M., Amtrak Train No. 188 suddenly and violently derailed near Frankford Junction, in Philadelphia, Pennsylvania. At the time of the derailment, the train was travelling in excess of 100 miles per hour as it approached a curve subject to a fifty-mile-per-hour speed limit. The train was carrying 238 people. As a result of the derailment, eight people perished, twenty to twenty-five people sustained catastrophic injuries, and numerous others suffered a range of injuries.

Soon after the derailment, lawsuits against the National Railroad Passenger Corporation ("Amtrak") were filed in multiple federal jurisdictions.[1] To bring order to the litigation, a group of plaintiffs sought the formation of an MDL. On October 13, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") established MDL 2654 as the procedural framework for

[1] Many actions also list the train engineer, Brandon Bostian, who was at the controls of the train when it derailed, as a defendant. The Federal Railroad Administration and the National Transportation Safety Board have also been listed as respondents in several actions.

coordinating all pre-trial proceedings arising from the derailment. The JPML assigned the MDL to this Court.

At the time of this order, the parties estimate lawsuits on behalf of roughly 119 passengers have been filed, including all wrongful-death claims and all catastrophic-injury claims. Amtrak has acknowledged that the train was travelling above the allowable speed, and has admitted liability for compensatory damages arising from the incident.

Plaintiffs' claims in this matter are subject to a liability cap imposed by the Amtrak Reform and Accountability Act of 1997, Pub. L. No. 105-134, 111 Stat. 2570 (codified at 49 U.S.C. § 28103). At the time of the derailment, the liability cap was $200 million. See 49 U.S.C. § 28103 (2015). On December 4, 2015, President Obama signed the Fixing America's Surface Transportation Act ("FAST Act"), Pub. L. 114-94, 129 Stat. 1312, which raised the cap to $295 million as it applies to this derailment, see id. § 11415. Amtrak has settled certain smaller claims, but has not resolved the claims in their entirety, and has not agreed that the aggregate compensatory damages for this matter exceed the $295 million liability limit.

II. Procedural Background

Plaintiffs Mark and Nicola Tulk ("Tulks"), through their counsel Evan K. Aidman, initially filed a complaint against Amtrak with no class claims. See Compl., Doc. No. 1,[2] filed in Case No. 2:15-cv-2849 (E.D. Pa. May 21, 2015).[3] On August 6, 2015, through their counsel Mr. Aidman and new counsel Jonathan and Lauren Schochor of Schochor Federico & Staton, P.A. and Read McCaffery of Liddle & Robinson LLP, the Tulks filed a separate class action. See

[2] Unless otherwise indicated, all document numbers refer to documents filed on the master docket file, Case No. 15-md-2654 (E.D. Pa).

[3] The Tulks aver that, among other damages, Mark Tulk "suffered serious and disabling injuries including head injury, abrasions, contusions, bruises, fracture[d] cheek and finger, collapsed lung, ligament damage, orthopedic injuries, mental and emotional pain and suffering." Compl. ¶ 56, filed in Case No. 2:15-cv-2849.

Compl., Doc. No. 1, filed in Case No. 2:15-cv-4354 (E.D. Pa.) ("Class Compl.").[4] In the class complaint, the Tulks contend that this action is properly maintained as a class action under Rule 23(b)(1)(A), 23(b)(1)(B), and 23(b)(3), and request damages in the amount of one billion dollars. Class Compl. ¶¶ 51-53, 90. Despite these claims, the Tulks did not file any objections to the ongoing MDL proceedings, which ran from June through October of 2015. On February 2, 2016, after MDL 2654 had been established, the Tulks filed a motion in their individual docket to certify a mandatory, non-opt out, settlement class pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). See Mot. for Settlement Class Certification, Doc. No. 12, filed in Case No. 15-cv-4354 ("Tulks' Certif. Mot.").

The Tulks move for an order "certifying a Settlement Class" pursuant to Rule 23(b)(1)(B), "for the purpose of facilitating class-wide settlement discussions" with Amtrak. Tulks' Certif. Mot. 1.[5] The certification is styled as preliminary. See Mem. in Reply to Opp'n to Mot. for Settlement Class Certification 17, Doc. No. 26 ("Tulks' Mem. Reply"). They argue that certification is appropriate because it will allow for class-wide negotiations, prevent individual plaintiffs from seeking to diminish the proceeds available for all claims, and permit notification to all potential class members who may be unaware of their potential claims. Tulks' Certif. Mot. 3-4. The Tulks maintain that if settlement is reached, plaintiffs will receive approximately $50 to $70 million more of the $295 million available, as a result of reduced legal fees. Id. at 5. If the settlement class is preliminarily certified, the Tulks request that the Court temporarily enjoin putative class members from pursuing individual claims, to eliminate the risk that the limited funds available for class-wide settlement will be reduced. Id. If settlement is reached, the parties

[4] This is the only case stemming from the May 12, 2015 derailment that has been filed as a class action.

[5] Specifically, they seek certification of "a mandatory, non-opt out, settlement class consisting of individuals who suffered injury as a result of the May 12, 2015, derailment and those who possess legally cognizable claims for wrongful death and/or loss of consortium arising out of any such injury. Excluded from this proposed Class are all Amtrak employees eligible for compensation under the FELA." Tulks' Certif. Mot. 1.

will notify the Court and seek approval of the settlement and final class certification, with any evidentiary showing necessary to support such motions. Id. If no settlement is reached, the Tulks state that the certification order will be automatically vacated, and the parties will retain all their rights with respect to class certification and the merits of the actions. Id.

As the Tulks' motion was filed only in their individual docket, the Court ordered that all parties to the MDL respond to the motion for class certification. Order, Doc. No. 5. A consolidated brief in opposition to the motion was filed on behalf of counsel from 80 of the then 88 cases coordinated in the MDL ("Consolidated Plaintiffs"). Consolidated Br. of Pls. in Opp'n to the Mot. for Class Certification, Doc. No. 8 ("Pls.' Cons. Resp."). Consolidated Plaintiffs vigorously oppose certification and argue that the Tulks have failed to establish the predicates for a class action under Rule 23(b)(1)(b) and 23(a) and, further, that the MDL procedure is appropriate and sufficient to currently manage this litigation. Pls.' Cons. Resp. 1-2. Their response also includes eight affidavits on behalf of nine victims of the Amtrak derailment who oppose class certification and want to be represented by their counsel of choice. See Exs. C-J to Pls.' Cons. Resp., Doc. No. 8-2. Plaintiff Lawrence J. Saia, as Personal Representative of the Estate of Giuseppe Piras, joined in the consolidated brief opposing certification, but also filed a separate response expressing outrage at the prospect of substitute counsel being forced upon him and Mr. Piras's family. Resp., Doc. No. 9. Defendant Amtrak also filed a response deferring to the Court and plaintiffs as to whether certification is the most fair and efficient way to resolve this case. Def. Amtrak's Resp. to Mot. for Settlement Class Certification, Doc. No. 7 ("Amtrak Resp."). No plaintiffs filed a response in support of the Tulks' motion.

On March 14, 2016, the Tulks re-filed their initial class certification motion on the MDL docket, Doc. No. 25, and then filed a reply in support of settlement class certification, Doc. No.

26. In response to this Court's Order, Doc. No. 6, directing the parties to furnish recommendations for the structure and management of the litigation, the Tulks also filed recommendations that further flesh out how this litigation would proceed if class certification were preliminarily approved. See Counsel for Class Pls.' Recommendations, Doc. No. 55 ("Tulks' Recs.").

The Tulks' motion is now ripe for decision.

III. Discussion

a. Class Settlement Certification

The Federal Rules of Civil Procedure do not expressly provide for certification of a class for settlement purposes only. See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 777-78 (3d Cir. 1995) ("GM Trucks") ("The settlement class device is . . . a judicially crafted procedure."). In GM Trucks, the Third Circuit extensively reviewed class action law and the use of class action settlements, and found that the certification of a settlement class can be appropriate, provided that the court ensures that the class meets the requirements of Rule 23. Id. at 778. In its analysis, the Third Circuit described the typical manner in which a motion for settlement class certification arises: "Usually, the request for a settlement class is presented to the court by both plaintiff(s) and defendant(s); having provisionally settled the case before seeking certification, the parties move for simultaneous class certification and settlement approval." Id. This model, in which the plaintiffs and defendants involved in the litigation first reach a settlement before moving for class certification, is ubiquitous in settlement class certifications. See, e.g., id. at 786 (citing 13 cases where the litigation followed the typical

pattern of settlement first);[6] In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191 (E.D. Pa.), petition dismissed sub nom. In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570 (3d Cir. 2014); Wallace v. Powell, 288 F.R.D. 347, 358 (M.D. Pa. 2012).[7] The standard procedure in these instances is for courts to 1) provisionally certify the class, such that proper notifications can be disseminated to the class at large, and then 2) hold a final fairness hearing in order to issue a final class certification and approve the settlement. See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 165-67 (E.D. Pa. 1997); Jones v. Commerce Bancorp, Inc., No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing."). Thus, in the normal course of events, "by the time the court considers certification, the defendant has essentially stipulated to the existence of the class requirements since it now has an interest in binding an entire class with its proffered settlement." GM Trucks, 55 F.3d at 786.

The posture of the Tulks' motion diverges from this model. The Tulks cite to language in GM Trucks to support their position that a class may be provisionally certified so that parties can negotiate a settlement, and then proceed with formal certification. See 55 F.3d at 786 ("[A] settlement class is a device whereby the court postpones the formal certification procedure until the parties have successfully negotiated a settlement, thus allowing a defendant to explore

---

[6] One case cited, In re Bendectin Prods. Liab. Litig., 102 F.R.D. 239 (S.D. Ohio 1984), diverges slightly. In that case, the district court conditionally certified a class for settlement under Rule 23(b)(1)(A)&(B) after the defendant had made a serious settlement offer and a majority of the Plaintiffs' Lead Counsel Committee tentatively favored the proposal. See In re Bendectin Products Liab. Litig.,749 F.2d 300, 302 (6th Cir. 1984). The Sixth Circuit overturned the certification order as clearly erroneous because the district court judge did not conduct a fact-finding inquiry into the question of whether a limited fund under 23(b)(1)(B) actually existed. See id. at 306.

[7] See also 2 McLaughlin on Class Actions § 6:3 (12th ed. 2015) ("A true 'settlement class' arises when the named parties to an uncertified class action reach a provisional settlement that they wish to make binding on the class as a whole."); Settlement, Voluntary Dismissal, or Compromise of Class Actions—Settlement Classes, 7B Fed. Prac. & Proc. Civ. § 1797.2 (3d ed. 2015) ("[A] common practice . . . is for the parties to move simultaneously for class certification and settlement approval, with a single notice being sent advising class members of a plan to tentatively certify a class for the purposes of settlement and to approve a proposed settlement.").

settlement without conceding any of its arguments against certification."); Mem. in Supp. of Certification 4, Doc. No. 12-1 ("Tulks' Mem. Supp. Certif. Mot."). However, the Tulks cite that portion of the GM Trucks which explains typical class certification procedure, in which a class complaint is filed, certification is delayed pending settlement discussions amongst the parties, and only after the success of the negotiations does the court conditionally certify the class for settlement purposes. See 55 F.3d at 786. That is not the case here. GM Trucks does not support the Tulks' assertion that their motion is routine. In fact, the Tulks' motion glosses over its atypical nature and does not cite a single case where a settlement class was certified before a settlement had been negotiated, or even formally discussed. In essence, the Tulks' motion does not seek settlement class certification, as it is traditionally defined and used, but rather requests preliminary class certification in order to conduct settlement negotiations. Instead of coming to the Court with a proposed resolution of the case, the Tulks seek the Court's imprimatur, via designation as class counsel for the settlement class, in order to attempt to negotiate a class-wide settlement with Amtrak.

b. Certification Standard

To successfully certify a class, the class must satisfy the prerequisites of Federal Rule of Civil Procedure 23(a) and one of the three subparts of Rule 23(b). See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309-10 (3d Cir. 2008), as amended (Jan. 16, 2009). The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 591 (3d Cir. 2012). "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." In re Hydrogen Peroxide, 552 F.3d at 320. Certification is only proper "'if the trial court is satisfied, after a

rigorous analysis, that the prerequisites' of Rule 23 are met." Id. at 309 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)). As discussed above, the standards for class certification apply equally to settlement class certification. See GM Trucks, 55 F.3d at 798 ("[W]e do not believe that Rule 23 authorizes separate, liberalized criteria for settlement classes.").

The parties contest the appropriate standard for certification under these atypical circumstances. The Consolidated Plaintiffs argue that the In re Hydrogen Peroxide standard—requiring "rigorous analysis" with proof of each element by a "preponderance of the evidence"—is appropriate in this matter. Pls.' Cons. Resp. 11-12. The Tulks disagree. While their initial certification motion was not explicit as to its request for preliminary certification or the appropriate standard of review, the Tulks have clarified that they are seeking preliminary settlement class certification. Tulks' Mem. Reply 17.[8] The Tulks maintain that preliminary certification is governed by a standard similar to that used by courts in granting "conditional certification" under the pre-2003 version of Rule 23. Tulks' Mem. Reply 18.[9] Specifically, they cite Blackie v. Barrack, which found that all that is *required* to conditionally certify a class is that a judge conduct an analysis of the material before him, including his estimation of the future course of the litigation, and determine based on "material sufficient to form a reasonable

[8] The Third Circuit has held that preliminary class certification orders are not appealable as interlocutory orders. In re Nat'l Football League, 775 F.3d at 584 ("We hold that an interlocutory appeal pursuant to Rule 23(f) permits the court of appeals to review only an 'order granting or denying class-action certification' issued pursuant to Rule 23(c)(1). An order issued under some other subdivision of Rule 23, such as a case management order issued pursuant to Rule 23(e) that 'preliminarily' or 'conditionally' addresses class certification but reserves the class certification determination for a later time, does not qualify as an 'order granting or denying class-action certification' that is subject to interlocutory review under Rule 23(f)."). Here, this Order does not make any final determination regarding class certification in this matter, and thus it is not subject to interlocutory appeal.

[9] See In re Nat'l Football League, 775 F.3d at 579 ("In 2003, concerned that district courts were conditionally certifying putative class actions without undertaking a thorough analysis of the Rule 23(a) and (b) certification requirements, the Supreme Court and Congress deleted the portion of Rule 23(c)(1) that provided that class certification 'may be conditional.'"); Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment ("The provision that a class certification 'may be conditional' [was] deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").

judgment on each requirement," that the requirements are met. 524 F.2d 891, 900-01 (9th Cir. 1975);[10] Tulks' Mem. Reply 18. The Tulks go on to say that "based on the pleadings, materials available, this Court's prior judicial experience, and undisputed facts, this Honorable Court is *permitted* to make a determination that the requirements of Rule 23 have been met, and grant preliminary class certification for purposes of facilitating settlement negotiations with Amtrak on a global basis." Tulks' Mem. Reply at 19 (emphasis added).

The Court agrees with the Tulks that a settlement class can be preliminarily certified based on a less rigorous analysis than that necessary for final certification. Courts may conduct a less demanding review at the preliminary certification stage. See, e.g., In re Processed Egg Prods. Antitrust Litig., No. 08-MD-2002, 2014 WL 828083, at *2-3 (E.D. Pa. Feb. 28, 2014) (approving settlement agreement preliminarily and certifying class based on perfunctory review of the Rule 23 requirements).[11]

---

[10] The Blackie court further opined that a "judge may not conditionally certify an improper class on the basis of a speculative possibility that it may later meet the requirements. However, neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule." 524 F.2d at 901 (citation omitted).

[11] See also Sullivan v. DB Invs., Inc., 667 F.3d 273, 287-93 (3d Cir. 2011) (recounting process in lower court, wherein the district court judge entered an order approving conditional certification after cursory review established Rule 23 requirements were met, and then later approved final class settlement and certification upon more robust review); Gates v. Rohm & Haas Co., 248 F.R.D. 434, 439 (E.D. Pa. 2008) ("At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice . . . leaving the final certification decision for the fairness hearing."); id. (finding preliminary approval warranted after "consideration of the procedural history of [the] litigation, the experience, conduct and intentions of settling parties' counsel and the proposed Settlement as a whole"); Smith v. Prof'l Billing & Mgmt. Servs., Inc., No. 06-4453JEI, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (noting that upon preliminary evaluation "some courts make only a preliminary determination that the proposed claims satisfy the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)" while "[o]ther courts make a final decision as to the appropriateness of class certification" (citing Jones v. Commerce Bancorp, Inc., No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007))); Newberg on Class Actions § 13:18 (5th ed. 2015) ("[C]ourts often follow this general approach, declining to treat formal class certification as a prerequisite for preliminary approval and undertaking a more cursory class certification analysis at the preliminary approval stage, then labeling the result as 'preliminary certification' or 'conditional certification.'"); Manual for Complex Litigation (Fourth) § 21.632 (2004) ("If the case is presented for both class certification and settlement approval . . . [t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).").

However, this does not cure the problems with the settlement class proposed here. A review of the case law makes clear, however, that although courts may conduct a less rigorous analysis, the party moving for class certification must still demonstrate that the requirements of Rule 23 are met. See In re Nat'l Football League, 301 F.R.D. at 200 (finding that at the preliminary approval stage, moving plaintiffs must demonstrate that the Rule 23 requirements are satisfied). Furthermore, in all instances of preliminary class settlement certification this Court has reviewed, the courts approving a preliminary settlement class are doing so after extensive settlement discussions have occurred and the parties have reached a proposed resolution. See, e.g., Sullivan v. DB Invs., Inc., 667 F.3d 273, 287-93 (3d Cir. 2011) (describing conditional certification of a settlement class by the district court after years of contentious litigation and months of settlement discussions). Finally, the Court is mindful of the Supreme Court's admonition that "the moment of certification requires 'heightene[d] attention,' to the justifications for binding the class members." Ortiz v. Fibreboard Corp., 527 U.S. 815, 849 (1999) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." Id. That concern is implicated here, as preliminary approval would include an injunction preventing other plaintiffs from pursuing individual claims. See Tulks' Certif. Mot. 5.

IV. Analysis

At this stage of the litigation, the Tulks have not shown that the proposed settlement class satisfies Rule 23(b)(1)(B). Meeting the requirements of Rule 23(b) is necessary for class

certification whether preliminary or final. Accordingly, the Court will not address whether the requirements of Rule 23(a) are met here.[12]

a. Rule 23(b)(1)(B)

Rule 23(b)(1)(B) provides for the certification of a class action if the requirements of Rule 23(a) are met, and if:

> [P]rosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B). In these types of actions, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." Ortiz, 527 U.S. at 834. The limited fund class action is one of the "classic examples" or "traditional varieties" of these representative actions, "aggregating claims made by numerous persons against a fund insufficient to satisfy all claims." Id. at 833-34 (alteration, internal quotation marks, and citation omitted).

The Tulks contend that their motion to certify a settlement class is appropriate under Rule 23(b)(1)(B) because the FAST Act's liability cap establishes a limited fund. Tulks' Certif. Mot. 3. The motion postulates that the statutory cap on Amtrak's liability for this derailment effectively limits funds available here for awards of compensatory and punitive damages. In the Tulks' view, the limited fund is $295 million—the potential, aggregated sum of Amtrak's liability for all individual death, personal injury, and property damage claims, and punitive damage claims.

[12] See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.) opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) (holding that district court did not abuse its discretion in denying class certification pursuant to Rule 23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3), and declining to consider Rule 23(a) factors upon finding that Rule 23(b) was not satisfied).

i. The Supreme Court's Decision in Ortiz

The starting point for analysis of Rule 23(b)(1)(B) is the Supreme Court's ruling in Ortiz. The case arose from the "elephantine mass of asbestos cases" that was swelling throughout the 1980s and 1990s. Ortiz, 527 U.S. at 821-22. The respondent in that case, Fibreboard Corporation, was a manufacturer of a variety of asbestos products. Id. at 822. Once the damage that asbestos caused became clear, Fibreboard became embroiled in asbestos-related litigation for personal injuries caused by its products, and for insurance coverage of its ever-burgeoning asbestos-related legal costs. Id. at 822-23. After years of litigation and unsuccessful attempts at resolution, Fibreboard, its insurers, and a group of plaintiffs' counsel crafted a global settlement agreement. Id. at 822-25. The agreement set up a $1.525 billion fund to be used to compensate those with asbestos-related claims who had not yet brought suit or settled their claims against Fibreboard. Id. at 824-26. Based on the purportedly limited nature of this fund, the parties sought certification of a settlement class pursuant to Rule 23(b)(1)(B). Id. at 825-26.

After the class was certified below, the Supreme Court reversed. In doing so, the Court undertook an exhaustive review of the history of limited-fund class actions, and expressed serious reservations about their use in the mass tort context. The mandatory aspect of limited fund actions, in particular, troubled the Court. Class actions under Rule 23(b)(1) are not subject to the Rule 23(c) provisions requiring notice to absent class members and the opportunity for potential class members to opt out of the class as a matter of right. Ortiz, 527 U.S. at 833 n.13; id. at 841 n.19 ("Rule 23 . . . specifies no notice requirement for subdivision (b)(1)(B) actions beyond that required by subdivision (e) for settlement purposes."). Recognizing the dangers of these actions, the Supreme Court noted that "it is clear that the Advisory Committee did not contemplate that the mandatory class action codified in subdivision (b)(1)(B) would be used to

aggregate unliquidated tort claims on a limited fund rationale." Id. at 843; see also id. ("The original concept of the limited fund class does not readily fit the situation where a large volume of claims might eventually result in judgments that in the aggregate could exceed the assets available to satisfy them." )(internal quotation marks and citation omitted)). As the Supreme Court explained:

> It is simply implausible that the Advisory Committee, so concerned about the potential difficulties posed by dealing with mass tort cases under Rule 23(b)(3), with its provisions for notice and the right to opt out, see Rule 23(c)(2), would have uncritically assumed that mandatory versions of such class actions, lacking such protections, could be certified under Rule 23(b)(1)(B).

Id. at 844.

The Supreme Court "warn[ed] of the serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale." Ortiz, 527 U.S. at 845. In relevant part, the Court wrote:

> First, the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members . . . . The inherent tension between representative suits and the day-in-court ideal is only magnified if applied to damages claims gathered in a mandatory class. Unlike Rule 23(b)(3) class members, objectors to the collectivism of a mandatory subdivision (b)(1)(B) action have no inherent right to abstain. The legal rights of absent class members . . . are resolved regardless of either their consent, or, in a class with objectors, their express wish to the contrary.

Id. at 845-47 (footnotes, internal quotation marks, and citations omitted).

To address these concerns, the Supreme Court distilled the history of limited fund class actions into three characteristics "presumptively necessary" to ensure that the mandatory Rule 23(b)(1)(B) settlement class device is limited to appropriate circumstances. Ortiz, 527 U.S. at 842. The three benchmarks are:

> (1) "[T]he totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims."

(2) "[T]he whole of the inadequate fund [is] to be devoted to the overwhelming claims."
(3) "[T]he claimants identified by a common theory of recovery [are] treated equitably among themselves."

Id. at 838-39. Accordingly, only when these characteristics are present, is it justified to bind class members under Rule 23(b)(1)(B). Id. at 838. Actions that depart from these traditional norms bear the burden of justification, and "the greater the leniency in departing from the historical limited fund model, the greater the likelihood of abuse." Id. at 842.

The Court will address each characteristic in turn.

ii. Existence of Inadequate Fund

The first characteristic requires a determination of 1) the amount of damages in the case, and 2) the upper limit of the fund in question. See Ortiz, 527 U.S. at 850. Unlike the fund presented in Ortiz, the upper limit here is fixed: the $295 million liability cap set by Congress. The key question is whether the total amount of damages will exceed that amount. The Tulks argue, citing Ortiz, that this Court "can 'make a sufficiently reliable determination of the probable total'" based on "prior judicial experience." Tulks' Mem. Reply 14; Ortiz, 527 U.S. at 850.[13] The Tulks point to the deaths and serious injuries in the case, along with plaintiffs' claims to punitive damages, as sufficient to allow a determination that the maximum value of the claims exceeds $295 million. Tulks' Mem. Reply 14. The Tulks' projections are not based on evidence as to any particular victims in this case.

At this stage of the litigation, the Court cannot possibly make such a finding. Unlike every other request for settlement class certification this Court has seen, the contemplated settlement is based on speculation. The Tulks' motion provides no evidence, outside of the basic

[13] The Supreme Court in Ortiz declined to articulate an appropriate standard for evaluating whether a fund is limited. See 527 U.S. at 848 n.26. The Third Circuit requires "substantive evidence" be provided in order to show that the fund's assets are insufficient. See In re Sch. Asbestos Litig., 789 F.2d 996, 999 (3d Cir. 1986); In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 176 (E.D. Pa. 1997).

facts of this case, to support their contention that the damages here will exceed the $295 million limit. Calculating the damages in this case is not a simple process, unlike cases which involve liquidated damages. See In re Diet Drugs Prods. Liab. Litig., No. CIV. A. 98-20594, 1999 WL 782560, at *11 (E.D. Pa. Sept. 27, 1999) ("[I]n the traditional limited fund, the class members' claims are liquidated and, therefore, the claims are readily ascertainable and more susceptible to class treatment."). Amtrak has stated that they are in the process of disseminating and completing damages questionnaires as a first step to assess the injuries suffered by each plaintiff. See Amtrak Resp. 2. This process is ongoing, and no reasonable estimate of the damages is possible at this juncture. Therefore, without any basis to find that damages exceed the statutory limit, the Court will not resort to broad speculation. See In re Diet Drugs, 1999 WL 782560 at *7 (denying class certification and finding Rule 23(b)(1)(B) not met where the court had "no reasonable method by which to calculate, or even estimate with comfortable certainty . . . the total value of [plaintiffs'] claims").

iii. Fund Wholly Devoted to Claims

The second necessary component requires that the settlement fund at issue be wholly "devoted to the overwhelming claims." Ortiz, 527 U.S. at 839. In essence, this aspect reflects the purpose of a limited fund action, which is to ensure "that the class as a whole [is] given the best deal" and the defendant is not given "a better deal than *seriatim* litigation would have produced." Id.

The Tulks argue that any settlement they negotiate would exhaust all available funds, and that the money saved by the potential settlement will result in a better deal for the plaintiffs. Tulks' Mem. Reply 15. As explained above, without evidence of the value of the claims, any finding by this Court that the putative settlement would exhaust the fund and be the best deal for

the victims is hypothetical and inappropriate at this time. This is especially true given the potential inequities that granting class certification could have on the litigation, as will be more fully discussed below.

iv. Equitable Treatment

The third and final necessary element of Rule 23(b)(1)(B) actions is that "the claimants identified by a common theory of recovery [are] treated equitably among themselves." Ortiz, 527 U.S. at 839. Primary equity considerations are the inclusiveness of the class and the fairness of distributions to those within it. See id. at 854. The Tulks argue that these factors are met here, because as compared to seriatim litigation, settlement would result in more equitable treatment for the class. Tulks' Mem. Reply 16. They also emphasize that through class treatment, all passengers on the train would be included and protected in any settlement they reach. Id. at 16-17. The Tulks' proposed allocation plan describes the process they would use to reach an equitable result for the victims in this litigation. See Tulks' Recs. 6-8.

As there is no actual plan before the Court, we cannot reasonably assess whether the proposed settlement class would meet this element of Rule 23(b)(1)(B). While the allocation plan filed by the Tulks includes specific details about their envisioned settlement plan and provides insight into what the Tulks seek, it only represents one half of the equation. All parties, including Amtrak and the other plaintiffs, have a voice in settlement. A unilateral plan for attempting to reach settlement is not a settlement agreement. Further, because the nature of this litigation does not allow for simple pro rata distribution of any existing fund, which is often customary in limited settlement fund class actions, the Court is even less inclined to assume that this factor will be met. See Ortiz, 527 U.S. at 855 ("Fair treatment . . . [is] characteristically assured by

straightforward pro rata distribution of the limited fund."). Thus, the Tulks have not shown that their proposed settlement class satisfies Rule 23(b)(1)(B).

b. Management of the Litigation

A fundamental aspect of class action practice and MDL proceedings is the potential for courts and parties to work together to manage litigation in the most efficient and fair way possible. This ruling is consistent with Federal Rule of Civil Procedure 23, which is derived from equity practice, and those origins remain relevant today. See Amchem, 521 U.S. at 613. The Supreme Court has recognized that "[t]he certification of a nationwide class, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court." Califano v. Yamasaki, 442 U.S. 682, 703 (1979). This discretion is reflected in the language of the rules, and ties into "the inherent power [of a trial court] to manage and control its own pending litigation." Beattie v. CenturyTel, Inc., 511 F.3d 554, 559 (6th Cir. 2007). In their role, district court judges are entrusted to ensure that class action certification is appropriate, and in harmony with the Federal Rules of Civil Procedure.[14] See, e.g., Yamasaki, 442 U.S. at 702 ("[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate"); In re Beef Indus. Antitrust Litig., 607 F.2d 167, 177 (5th Cir. 1979) ("The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies." (citation omitted)).[15] In addition, a court presiding over an MDL

[14] See Tobias Barrington Wolff, Discretion in Class Certification, 162 U. Pa. L. Rev. 1897, 1899 (2014) ("[D]iscretion in class certification--in particular, the discretion not to certify a class . . . serves a vital systemic role. Discretion is a safety valve. It enables district judges to avoid issuing certification orders that would undermine substantive policies or set in motion unnecessary and counterproductive remedies."); id. at 1927 ("[C]ourts have also exercised the discretion not to certify in response to litigation dynamics not specifically tied to any substantive legal regime.").

[15] See also Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979) ("District courts . . . have broad power and discretion vested in them by [Rule] 23 with respect to matters involving the certification and management of

(continued…)

proceeding has "broad discretion to determine the course and scope of pretrial proceedings." In re Light Cigarettes Mktg. & Sales Practices Litig., 856 F. Supp. 2d 1330, 1332 n.2 (U.S. Jud. Pan. Mult. Lit. 2012). At this juncture, the Court finds that the MDL procedures are preferable.

Of primary importance to this Court is facilitating a swift and efficient process that will work towards a fair and appropriate result for the victims of this derailment. Prior judicial experience has shown that when the parties to an action work cooperatively together, better results are achieved. Only one represented party is in favor of settlement class certification, the Tulks. Counsel for nearly all of the plaintiffs in the MDL have expressed vehement opposition to their motion. Any current grant of class certification would likely ensure that this litigation will drag on, raising legal costs and reducing the funds available to the victims in this matter.

The present MDL structure provides a good starting point for putting this litigation on the path to resolution. Through the MDL structure, the parties and the Court may pursue a myriad of procedural options designed to ensure that a fair process takes place, including establishing a framework to promote settlement discussions at any time during the course of the litigation. While the Tulks have brought up many important points about the potential savings a class action would bring, pushing the litigation in that direction is premature and currently unnecessary. Here, the individual personal injury claims have not been proven or liquidated, and it is impossible to make any findings as to the aggregate value of those claims. The existing MDL procedures are not only adequate to assess these claims, the MDL procedures are the superior method. If the claims are sent into mediation, the Court may never have the record or

(…continued)
potentially cumbersome or frivolous class actions."); In re Hydrogen Peroxide, 552 F.3d at 310 ("The trial court, well-positioned to decide which facts and legal arguments are most important to each Rule 23 requirement, possesses broad discretion to control proceedings and frame issues for consideration under Rule 23."); In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) ("The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23.").

ability to determine their value or the limit and insufficiency of the fund. Would-be class plaintiffs and their counsel have not satisfied any of the requirements for an exceptional mandatory class action.

In fact, the Court has observed that the necessary predicates to efficient resolution are already underway between the parties. The absence of any dispute over liability renders this litigation one primarily concerned with determining each plaintiff's individual damages and ensuring the fairest and most just result under the FAST Act. In this vein, Amtrak and counsel for plaintiffs have already developed a damages questionnaire that is being used to estimate the amount of damages outstanding in this action. As it stands, the Court believes it may be possible for a settlement to be achieved, avoiding the prospect of seriatim litigation. Preliminarily certifying a settlement class at this juncture would stop the forward progression being made, break the bonds between plaintiffs and their chosen counsel, and elevate one particular counsel above all others in this matter—with the obvious side effect of ensuring greater attorney's fees for those counsel representing the Tulks. Thus, in addition to not meeting the requirements of Rule 23, preliminary settlement class certification is not the best method to move this litigation forward.

## V. CONCLUSION

For the foregoing reasons, plaintiffs Mark and Nicola Tulks' Motion for Settlement Class Certification (Doc. No. 12, filed in Case No. 15-cv-4354, & Doc. No. 25, filed in Case No. 15-md-2654) is DENIED.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.